393 A.2d 1024

**COMMONWEALTH of Pennsylvania**

v.

**Ernest COTTLE, Appellant.**

Superior Court of Pennsylvania.

Submitted June 21, 1977.

Decided Nov. 3, 1978.

John W. Packel, Assistant Public Defender, and Benjamin Lerner, Defender, Philadelphia, for appellant.

Deborah E. Glass, Assistant District Attorney, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

Appeal is taken from judgment of sentence rendered following revocation of probation. The questions presented here are whether a sentencing judge should be obliged to place upon the record his explanation as to sentencing, or write an opinion thereon; whether the judge in this case abused his discretion in sentencing appellant to confinement when the probation department recommended to the contrary; and whether the sentence was excessive.

█ The subject of the trial court's need to explain reasons for the sentence given has recently been much discussed. *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977), mandates that such reasons must be made part of the record. See also *Commonwealth v. Kostka*, 475 Pa. 85, 379 A.2d 884 (1977) and *Commonwealth v. Wertz*, 252 Pa.Super. 584, 384 A.2d 933 (1978). This requirement has been met in this case by Judge BRAIG'S Opinion in which he stated his reasons for his sentence. Therein the sentencing judge pointed out that for four years, during which appellant had been arrested several times, he had not made himself available to probation officials. Consequently he was sentenced to confinement. The lower court opinion amply describes the facts which were the basis of the probation revocation and which gave rise to the sentencing. That opinion states as follows:

"On September 4, 1969 Ernest Cottle appeared before Judge Herbert Levin of the Philadelphia Court of Common Pleas and pled guilty to charges of Aggravated Robbery and Larceny of Motor Vehicle and Receiving Stolen Goods. On the Larceny and Receiving Stolen Goods charges, he was placed on five years probation to begin at the expiration of the sentence on the Robbery charge, the probationary period being from January 25, 1971 to January 25, 1976. During the probationary period, the defendant was arrested on charges of Burglary, Larceny, Receiving Stolen Goods and Violation of the Uniform Firearms Act. He failed to appear for three separate trials and hearings on these charges, and his whereabouts

were unknown to anyone in the Courts or Probation Department from September 6, 1972 until his arrest on a Bench Warrant on March 13, 1976. The Bills of Indictments on the charges, which resulted in the three separate arrests during the probationary period, were either nolle prossed or dismissed in April of 1976.

"Defendant appeared before this Court (Judge Levin no longer being on the bench) for a Gagnon I hearing on June 2, 1976 and a Gagnon II hearing on June 22, 1976. At the Gagnon II hearing, this Court found that defendant had violated Judge Levin's sentence of probation on the larceny and Receiving charges, revoked that probation and imposed a sentence of incarceration of 2½ to 5 years on the defendant. Specifically, the violation upon which defendant's probation was revoked was his failure to report to or cooperate with the Probation Department for approximately a four year period."

█ Furthermore, the Opinion of the court below fully answers the other assignments of error. We find wholly without merit the allegations of abuse of discretion as to sentencing and the claimed excessiveness of the sentence. For appellant to have absented himself from the processes of criminal justice for four years, and to have been arrested and failed to appear in court numerous times during that period, are strong reasons justifying the sentence imposed.

Judgment of sentence affirmed.

SPAETH, J., files a dissenting opinion.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

The judgment of sentence should be vacated and the case remanded for resentencing by another judge.

−1−

It is settled that the sentencing judge must state the reasons for the sentence. *Commonwealth v. Kostka*, 475 Pa. 85, 379 A.2d 884 (1977); *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977).

Here, when imposing sentence, the judge said:

THE COURT: This is a *Gagnon* 2 Hearing. There is no question in the Court's mind that he is in violation of the terms and conditions of the probation imposed by Judge Levin on Bill of Indictment 549, specifically because of his refusal to report to and cooperate with the efforts of the Probation Department.

I think we have a sufficiently clear record now supported by the facts to reach that conclusion, and I find he has violated the terms and conditions of the probation imposed by Judge Levin. I will therefore revoke that probation and re-impose a prison sentence on Bill 549 of not less than two and a half nor more than five years in the State Correctional Institute.

Now, Mr. Cottle, you have certain appellate rights from the sentence that was just imposed on you, and I would like to read these .... [etc.].

N.T. 39.

This statement did not comply with *Riggins* or *Kostka*. To be sure, it stated a reason for *revoking appellant's probation* : "because of his refusal to report to and cooperate with the efforts of the Probation Department." However, that decision made, the judge next had to decide on appellant's *sentence.* The statement only shows that he decided on the longest possible sentence; no reason for that decision is given.

Neither did the judge in his opinion to this court state any reason for the sentence. The opinion reads as follows:

On September 4, 1969 Ernest Cottle appeared before Judge Herbert Levin of the Philadelphia Court of Common Pleas and pled guilty to charges of Aggravated Robbery and Larceny of Motor Vehicle and Receiving

Stolen Goods. On the Larceny and Receiving Stolen Goods charges, he was placed on five years probation to begin at the expiration of the sentence on the Robbery charge, the probationary period being from January 25, 1971 to January 25, 1976. During the probationary period, the defendant was arrested on charges of Burglary, Larceny, Receiving Stolen Goods and Violation of the Uniform Firearms Act. He failed to appear for three separate trials and hearings on these charges, and his whereabouts were unknown to anyone in the Courts or Probation Department from September 6, 1972 until his arrest on a Bench Warrant on March 13, 1976. The Bills of Indictments on the charges, which resulted in the three separate arrests during the probationary period, were either nolle prossed or dismissed in April of 1976.

Defendant appeared before this Court (Judge Levin no longer being on the Bench) for a *Gagnon* I hearing on June 2, 1976 and a *Gagnon* II hearing on June 22, 1976. At the *Gagnon* II hearing, this court found that defendant had violated Judge Levin's sentence of probation on the Larceny and Receiving charges, revoked that probation and imposed a sentence of incarceration of 2½ to 5 years on the defendant. Specifically, the violation upon which defendant's probation was revoked was his failure to report to or cooperate with the Probation Department for approximately a four year period.

When the sentencing judge fails, or refuses, to state the reasons for the sentence, the sentence must be vacated and the case remanded for resentencing. *Commonwealth v. Kostka, supra; Commonwealth v. Riggins, supra; Commonwealth v. Wertz*, 252 Pa.Super. 584, 384 A.2d 933 (1978).

–2–

It is also settled that on appropriate appeal this court and the Supreme Court have the responsibility to vacate a sentence determined to be so manifestly excessive as to constitute too severe a punishment. *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976). Indeed, one reason for

requiring the sentencing judge to state the reasons for the sentence is to enable the discharge of this responsibility. *Commonwealth v. Riggins, supra,* 474 Pa. at 131, 377 A.2d at 148. Thus, even if here the sentencing judge had stated a reason for imposing the longest possible prison sentence, still we should have to decide whether that sentence was so manifestly excessive as to constitute too severe a punishment.

In making this decision the appellate court must always ask at least two questions: First, did the sentencing judge consider the circumstances of the offense and the character of the offender? *Commonwealth v. Martin, supra.* And second, did the sentencing judge comply with the Sentencing Code, 18 Pa.C.S.A. §§ 1301 *et seq.* (Supp.1977)? The Code provides for five possible sentences, which may be combined,[1] and specific criteria by which the sentencing judge is to choose from among these five. The appellate court must ask whether the sentencing judge's choice of sentence was guided by these criteria. *Commonwealth v. Riggins, supra.*[2]

Here, the record demonstrates that the sentencing judge gave no consideration to the circumstances of the offense. Appellant pleaded guilty before Judge LEVIN, who is now retired. The sentencing judge therefore did not himself have any knowledge of the circumstances of the offense. The sentencing judge was told that on September 4, 1969, appellant appeared before Judge LEVIN, and pleaded guilty to charges of aggravated robbery, larceny of a motor vehicle

1. Order of probation, § 1322; determination of guilt without further penalty, § 1323; partial confinement, § 1324; total confinement, § 1325; and fine, § 1326.

2. In some cases the appellate court must ask additional questions, as, for example, whether the sentencing judge considered inaccurate or impermissible information, *see generally Commonwealth v. Phelps,* 450 Pa. 597, 301 A.2d 678 (1973) (defendant and his counsel entitled to examine presentence investigation report); *and see Commonwealth v. Smith,* 250 Pa.Super. 537, 378 A.2d 1278 (1977) (considering whether sentencing judge could consider statement that defendant was drug dealer), or whether an excessive disparity in sentence has occurred, *Commonwealth v. Thurmond,* 257 Pa.Super. 464, 390 A.2d 1330 (1978).

and receiving stolen goods; and that Judge LEVIN sentenced appellant to serve six to twenty three months for the robbery, this sentence to expire January 25, 1971, to be followed by five years probation for the larceny and receiving stolen goods. However, all the sentencing judge could learn from this information, so far as the circumstances of the offense were concerned, was that whatever the circumstances were, Judge LEVIN'S opinion must have been that they were such as to dictate a relatively mild sentence.[3]

There was some evidence of appellant's character. This was all received, however, during the *Gagnon* I and *Gagnon* II hearings; as appears from the statement by the sentencing judge, quoted page 1 *supra*, there was in fact no sentencing hearing at all, the judge instead proceeding at once from the decision to revoke probation to the imposition of sentence.

This procedural shortcut is of critical importance. At a *Gagnon* II hearing, the hearing judge must decide whether the probation has proved to be an "effective vehicle." *Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701 (1973); *Commonwealth v. Davis*, 234 Pa.Super. 31, 336 A.2d 616 (1975). If the judge decides that the probation has not proved effective, he may revoke it. Here, the evidence received during the *Gagnon* I and *Gagnon* II hearings showed repeated violations of the conditions of Judge LEVIN's probation. Appellant argues that these violations were not important. For example, although he did not report to his probation officer as required, and did not attend an alcoholic treatment program, he says that he has resolved his alcoholism on his own, and has become "a working, tax paying member of society," who has "not even been arrested in the last five years." Appellant's Brief at 25. The Commonwealth argues that appellant's violations of probation were important. For example, the Commonwealth says: "Not only did [appellant] fail to cooperate *in*

**3.** The transcript of the proceeding before Judge LEVIN demonstrates that this was indeed the case. This transcript is discussed *infra*, in part 3 of this opinion.

*any way* with the probation department, he was again arrested *less than two weeks* after the hearing. [Appellant] then failed to appear at the preliminary hearing on this latest charge, jumped bail, and eluded authorities until March 13, 1976, almost four years, admittedly to avoid arrest." Commonwealth's Brief at 8–9. All of this, however, is beside the point. We may assume that appellant's violations of probation were of such a nature as to warrant the hearing judge in finding that appellant's probation had not been an effective vehicle and should therefore be revoked.[4] Given this assumption, the question remained: What sentence should then be imposed? More specifically: Should a new, stricter probation be imposed? Should appellant be fined? Should he be sentenced to a work release program (partial confinement)? Or should he be sentenced to prison (total confinement)? If to prison, how long should his term be? No evidence was received with respect to any of these questions, nor did the sentencing judge address any of them; for no sentencing hearing was held, at which the evidence could have been received, and the questions addressed. In addition, the sentencing judge did not address any of these questions in his opinion to us. Indeed, nothing in the opinion so much as recognizes the existence of the questions, much less the responsibility to answer them by applying the criteria specified in the Sentencing Code.

Of these criteria, three are particularly pertinent. The Code provides in § 1371(c), that:

The court shall not impose a sentence of total confinement upon revocation *unless it finds* that:

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime he is not imprisoned; or

4. It must be noted, however, that in fact the hearing judge made no such finding; he only said: "I find he has violated the terms and conditions of the probation imposed by Judge LEVIN. I will therefore revoke that probation and re-impose a prison sentence .... [etc.]." *See* the judge's statement, quoted on page 1026 *supra*.

(3) such a sentence is essential to vindicate the authority of the court.

(Emphasis added.)

So far as the record discloses, appellant has not been convicted of another crime. Perhaps the sentencing judge believed that appellant was likely to commit another crime unless imprisoned, but he made no finding to that effect; moreover appellant's failure to commit a crime for several years and his gainful employment, would argue against such a finding. The first two criteria, therefore, do not support a sentence of total confinement.

With respect to the third criterion: The record does suggest that the sentencing judge believed that a sentence of total confinement was essential to vindicate the authority of the court. Thus, at the *Gagnon* I hearing, the judge said:

But if I understand this situation correctly, he for four years did not show up in court for a variety of charges, for whatever reasons they were dropped. I don't know, but they were dropped, they no longer exist, but he did not cooperate with the Probation Officer for four years.

Now, if that is not an insult to the sentence that Judge LEVIN imposed, I don't know what is.

N.T. 9.

If one accepts this statement, still, it sheds no light on why the judge decided a sentence of total confinement for 2½ to 5 years—the longest possible period—was required. The essence of the holding in *Commonwealth v. Riggins, supra,* is that no sentencing judge may impose such a sentence without explanation.

–3–

From the foregoing it is plain that the judgment of sentence should be vacated and the case remanded for resentencing. The only remaining question is whether the remand should be to the same sentencing judge. Several reasons suggest that it should be to a different judge.

In the first place, the connection of the sentencing judge to the case was accidental. As has been mentioned, appellant pleaded guilty before, and was initially sentenced by,

Judge LEVIN, who is retired.  Accordingly, the usual rule, that sentence should be imposed by the judge before whom the defendant pleads or is tried, is inapplicable.

In the second place, sometimes, when a proceeding gets off on the wrong foot, as this one has, it is better on remand to start fresh, before a judge who has had nothing to do with the case.  Here, the conclusion that a fresh start should be made derives in part from the manner in which the sentencing judge conducted the proceedings, in particular his failure to hold any sentencing hearing or to offer any explanation of his sentence.  In further part, however, this conclusion derives from a quite remarkable aspect of the record, which has so far not been mentioned, but which requires the most thoughtful consideration.

On February 25, 1969, one Mike Matthew Holmes was sentenced by Judge NIX (now Mr. Justice NIX) for a robbery committed on a SEPTA trolley; the sentence was eleven and a half to twenty three months in prison, to be followed by five years probation.  Apparently, at the sentencing, appellant stepped up and confessed to having been involved in the robbery, also up to that point he had not been implicated.  That this occurred appears from the transcript of appellant's sentencing proceeding before Judge LEVIN.  Then, the assistant district attorney told Judge LEVIN:

> At that time, the defendant stepped up and stated he wanted to say something.  Judge NIX advised him not to say anything, but he wanted to say something.
>
> He was taken to the District Attorney's office.  Detective Hahn interviewed him.  The victim still cannot identify the defendant.
>
> Normally, your Honor, I would ask for a more stringent sentence, but since he came in and pled guilty, I would ask for a sentence of six to twenty-three months.  Judge NIX said he never experienced anything like this, as a lawyer and as a Judge.

One may suspect that indeed very few lawyers or judges have had such an experience.  It is surprising that here,

neither the representative of the probation department nor appellant's counsel mentioned this aspect of the case to the sentencing judge; perhaps the explanation is there was no sentencing hearing; the evidence might have seemed irrelevant to a *Gagnon* hearing. In any case, the transcript of the proceeding before Judge LEVIN is in the record, and presumably was before the sentencing judge.

Furthermore, the representative of the probation department did recommend to the sentencing judge that appellant's probation be terminated and appellant discharged. This recommendation was first made at the *Gagnon* I hearing. The judge stated that he had "some difficulty" with it, and asked, "What reason do you have for that other than you may have a heavy case load?", going on to say that "[appellant's] failure to report to your office for four years seems to me to be a violation of that probation, without any explanation why he did not appear." N.T. 11–12. At the *Gagnon* II hearing the following colloquy between the representative of the probation department and the judge occurred:

As Your Honor recalls, on June 2nd Your Honor asked me to be more specific with my reasons for termination.

THE COURT: For recommending.

MR. WHITE: For recommending termination. Your Honor, may I read—

THE COURT: Certainly. What are your reasons?

MR. WHITE: Your Honor, at the time there were no direct violations, there were no convictions stemming from an arrest during his period of probation. The expiration date had passed when we had our violation hearing. The defendant had been incarcerated for a total of nine months and 22 days during his probation period. They were periods from 12/18/71 to January 12th, 1972; from March 3, '72, to August 18, '72; from March 13, 1976, to the present date. These incarcerations stem from either his arrest or from his failure to report to the Probation Department. While on probation all of his arrests stemmed from his drinking problem.

He stated that during 1971 and 1972 he was drinking two or three-fifths of whiskey every day. Although he had not reported from 1972, from August '72 until his arrest as a violator on March 13th, 1976, he had, in fact, stopped drinking and had become gainfully employed as a mechanic. This would have been the plan of the probation had he been reporting.

THE COURT: Is that your reason?

MR. WHITE: Those are my reasons.

N.T. 23–24.[5]

Thus the record indicates an initial mitigating circumstance of the most striking sort, and subsequent conduct leading to the probation department's recommendation of discharge. When one considers the sentence imposed, and the manner of its imposition, in light of this record, the conclusion is inescapable that on remand a fresh start should be made.

The judgment of sentence should be vacated, and the case remanded for resentencing before another judge.

5. Later the witness said that he had "verified" appellant's employment. N.T. 35. At the *Gagnon* I hearing, when asked, "Do you know whether [appellant] has solved his alcoholic problem?" he had answered, "No, I don't." N.T. 13.