426 A.2d 598
**COMMONWEALTH of Pennsylvania,**

v.

**Ernest COTTLE, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 26, 1981.

Decided March 13, 1981.

378

John W. Packel, Asst. Public Defender, Chief, Appeals Div., Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Kenneth Gallant, Philadelphia, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

NIX, Justice.

The issue in the present appeal is whether the sentencing judge in imposing the maximum prison sentence upon appellant for a violation of probation abused his discretion in view of the circumstances of this case.

On February 25, 1969, one Mike Matthew Holmes was sentenced by this writer.* Mr. Holmes had been convicted as a participant in a robbery of a SEPTA trolley. At that proceeding, though he was not a party to and had never been charged, the appellant, Ernest Cottle, approached the bench regarding his participation in the robbery.

Subsequent events were described by an Assistant District Attorney some months later at a proceeding before the Honorable Herbert Levin on a guilty plea on the robbery and an unrelated receiving stolen goods charge entered by appellant:

At that time, the defendant [Ernest Cottle], stepped up and stated he wanted to say something. Judge Nix advised him not to say anything, but he wanted to say something.

* In 1969 Mr. Justice Nix was serving as a Judge of the Court of Common Pleas of Philadelphia County.

He was taken to the District Attorney's office, Detective Hahn interviewed him. The victim still cannot identify the defendant.

Normally, Your Honorable, I would ask for a more stringent sentence, but since he came in and pled guilty, I would ask for a sentence of six to twenty three months.

At the sentencing stage of appellant's guilty plea proceeding, Judge Levin stated:

You have rehabilitated yourself when you walked into the courtroom and did what you did. This is not typical of a thug. You made a mistake, and I don't know how many people in this room who have made a mistake, also. I sentence you to six months to twenty-three months, but you will be released today, and you will have seventeen months parole on the robbery charge and on the receiving stolen goods charge I am going to put you on probation for five years more, but that is not to hurt you, that is to help you.

In 1971 and 1972, appellant was arrested on several charges and a probation detainer was placed against him. On August 18, 1972, appellant was brought before Judge Levin for violating his probation.[1] Judge Levin continued the probation hearing pending disposition of the open charges. In April 1976, all open charges were either dismissed or *nol prossed.*

On June 2, 1976 and June 22, 1976, probation revocation hearings were held before the Honorable Joseph P. Braig.[2] Although appellant had reported to his probation officer from 1969 until 1972 and had not been convicted of any crime while on probation, he was charged with the technical violation of failing to report after 1972.

1. The five year probationary sentence was imposed under the receiving stolen goods charge. Apparently at the time of the alleged violations, the parole period had been completed and appellant was then serving the probationary sentence. The maximum term of imprisonment under the receiving stolen goods indictment was 2½ to 5 years. 1939, June 24, P.L. 872, § 817; 1943, May 21, P.L. 306, § 1, 18 P.S. § 4817.

2. In the interim Judge Levin had retired.

During these proceedings, the probation department recommended that appellant be discharged and his probation terminated because Mr. Cottle, on his own initiative, had pursued an effective program of alcoholic rehabilitation and secured permanent employment which would have been the standards set for him by the Probation Department.

Based upon appellant's failure to report to the probation department, Judge Braig found appellant in violation of his probation and sentenced appellant to the maximum period of incarceration, to wit, two and one-half to five (2½ to 5) years. On July 14, 1976, counsel for appellant filed a petition for reconsideration of sentence which was denied by Judge Braig on July 20, 1976. On July 21, 1976, appellant filed an appeal with the Superior Court. On November 3, 1978, the Superior Court affirmed. *Commonwealth v. Cottle*, 260 Pa.Super. 85, 393 A.2d 1024 (1978) (Spaeth, J. dissenting). On March 1, 1979, this Court granted appellant's Petition for Allowance of Appeal.[3]

It is not disputed that appellant violated the probation imposed by Judge Levin in failing to report as directed. The question presented is whether this dereliction justified the imposition of the maximum sentence. In essence, appellant contends that the lower court erred in imposing a maximum prison sentence in the absence of factors justifying such a sentence. We agree.

From the record of the probation revocation hearing[4] and the opinion filed by Judge Braig pursuant to Pa.R.A.P.

3. Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2(a), 42 Pa.C.S.A. § 724(a).

4. In imposing sentence, Judge Braig stated:
 THE COURT: This is a *Gagnon 2* Hearing. There is no question in the Court's mind that he is in violation of the terms and conditions of the probation imposed by Judge Levin on Bill of Indictment 549, *specifically because of his refusal to report to and cooperate with the efforts of the Probation Department.*
 I think we have a sufficiently clear record now supported by the facts to reach that conclusion, and I find he has violated the terms and conditions of the probation imposed by Judge Levin. I will therefore revoke that probation and reimpose a prison sentence on

1925(a),[5] the only basis offered for the imposition of the challenged sentence was appellant's "failure to report to or cooperate with the Probation Department" as ordered by the sentencing court.

■ Traditionally, appellate courts in this jurisdiction have been reluctant to intrude upon the sentencing discretion of trial courts. We have long maintained that the appellate scope of review of the sentencing decision should be limited to sentences that exceeded the statutorily prescribed limits or sentences which were so manifestly excessive as to constitute a constitutionally impermissible sentence. *Commonwealth v. Williams*, 456 Pa. 550, 317 A.2d 250 (1974); *Commonwealth v. Hill*, 453 Pa. 349, 310 A.2d 88 (1973); *Commonwealth v. Lee*, 450 Pa. 152, 299 A.2d 640 (1973); *Commonwealth v. Person*, 450 Pa. 1, 297 A.2d 460 (1972); *Commonwealth v. Brown*, 443 Pa. 274, 278 A.2d 170 (1971); *Commonwealth v. Wrona*, 442 Pa. 201, 275 A.2d 78 (1971); *Commonwealth v. Marks*, 442 Pa. 208, 275 A.2d 81 (1971). This perception evolved from our adherence to the concept of individualized sentencing and the belief that the effectuation of that objective was best served by granting broad discretion to the sentencing courts. *See generally, Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976). More recently, question has been raised as to the wisdom of conferring upon the sentencing court almost unlimited, unstructured and unreviewable discretion.[6] Both the legisla-

Bill 549 of not less than two and a half nor more than five years in the State Correctional Institute.

5. In his opinion, Judge Braig noted:
 Defendant appeared before this Court (Judge Levin no longer being on the Bench) for a *Gagnon I* hearing on June 2, 1976 and a *Gagnon II* hearing, this court found that defendant had violated Judge Levin's sentence of probation on the Larceny and Receiving charges, revoked that probation and imposed a sentence of incarceration of 2½ to 5 years on the defendant. *Specifically, the violation upon which defendant's probation was revoked was his failure to report to or cooperate with the Probation Department for approximately a four year period.*

6. Schulhofer, Due Process of Sentencing, 128 Univ.Pa.L.Rev. 733 (1980); Vorenberg, Narrowing the Discretion of Criminal Justice

ture[7] and this Court[8] have been gravitating to a curtailment of the unlimited discretion originally entrusted to the sentencing court.

 Consistent with the trend towards structuring the sentencing discretion, the Sentencing Code, 18 Pa.C.S.A. § 1301, *et seq.*, which was added in 1974, attempts to set forth guidelines and principles to be followed in sentencing decisions. Section 1371 is concerned with the modification or revocation of orders of probation. The power to revoke an order of probation is provided for in § 1371(b). Section 1371(b) provides:

The court may revoke an order of probation upon proof of the violation of specified conditions of the probation. Upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation.[9]

Officials, 1976 Duke L.J. 651; Twentieth Century Task Force on Criminal Sentencing, Fair and Certain Punishment (1976); A. von Hirsch, Doing Justice (1976); Baylay, Good Intentions Gone Awry—A Proposal for Fundamental Change in Criminal Sentencing, 51 Wash.L.Rev. 529 (1976); Berger, Reducing Sentencing Disparity: Structured Discretion and the Sentencing Judge, 32 J.Miss.B. 414 (1976); Frankel, Criminal Sentences, Law Without Order (1973); American Bar Association Project on Minimum Standards, Standards Relating to Appellate Review of Sentences (Approved Draft, 1968); Kadish, Legal Norm and Discretion in the Police and Sentencing Process, 75 Harv.L.Rev. 904 (1962).

7. 18 Pa.C.S.A. § 1301, *et seq.* (Supp.1980–81); Pennsylvania Commission on Sentencing, Proposed Sentencing Guidelines, Pa.Bull. Vol. 11, No. 4, January 24, 1981, p. 463.

8. *Commonwealth v. Edrington*, 490 Pa. 251, 416 A.2d 455 (1980); *Commonwealth v. Kostka*, 475 Pa. 85, 379 A.2d 884 (1977); *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977); *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976); Pa.R.Crim.P. Rule 1401, *et seq.*

9. Section 1321(a) and (b) set forth the sentencing alternatives available to the court at the time of initial sentencing:
 (a) General rule. In determining the sentence to be imposed the court shall, except where a mandatory minimum sentence is otherwise provided by law, consider and select one or more of the following alternatives, and may impose them consecutively or concurrently:

Most pertinent to our instant inquiry is the limitation placed on the right to impose a sentence of total confinement upon the revocation of probation by § 1371(c). Section 1371(c) of the Sentencing Code, concerning modification or revocation of order of probation states:

The court *shall not* impose a sentence of total confinement upon revocation *unless it finds that*:

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

[Emphasis added.]

An analysis of the three prerequisites before the imposition of total confinement under Section 1371(c) is appropriate. Appellant in the instant case had not been convicted of

(1) An order of probation.
(2) A determination of guilt without further penalty.
(3) Partial confinement.
(4) Total confinement.
(5) A fine.
(b) General standards. In selecting from the alternatives set forth in subsection (a) the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing adopted by the Pennsylvania Commission on Sentencing and taking effect pursuant to section 1385 (relating to publication of guidelines for sentencing). In every case in which the court imposes a sentence for a felony or misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. In every case where the court imposes a sentence outside the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing pursuant to section 1384 (relating to adoption of guidelines for sentencing) and made effective pursuant to section 1385, the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. Failure to comply shall be grounds for vacating the sentence and resentencing the defendant.

another crime at the time of the revocation of probation hearing. Furthermore, there is nothing in the record to indicate that appellant was likely to commit a future crime if he was not imprisoned. Although appellant was arrested on three occasions in 1971 and 1972, these charges did not result in convictions and no inference adverse to appellant can be drawn from the fact of those arrests. Appellant was not charged with any further crimes between 1972 and the time of the revocation of his probation in 1976. It is therefore apparent that the interest of society reflected in the first and second criteria of § 1371(c) did not require the imposition of the maximum sentence in this case.

Having concluded that neither the first or second subparagraph of section 1371(c) provided a basis for the sentence imposed by Judge Braig, we must turn to subparagraph (3) to find if that justifies the imposition of the sentence in question. Clearly, the failure to abide by the court's directive to meet the terms of probation offends the dignity of the court. However, subparagraph (3) of section 1371(c) requires more than merely an affront to the court's authority. The language specifically requires that the sentence be "*essential* to vindicate the authority of the court." It is our judgment that under these unique facts it cannot be said that the imposition of the maximum sentence was "*essential*" to vindicate the court's authority.

Probation is a rehabilitative device to be used to assist the offender in his adjustment to life within society. In the instant case, Mr. Cottle's adjustment obviously required the overcoming of his alcoholic problem and his need to find gainful steady employment. Thus, although he did not meet the strict terms of the probationary requirements, he did in fact accomplish that which the probation was designed to achieve. This does not mean that Mr. Cottle should necessarily be absolved completely for his failure to comply with the court's directive but it does suggest that the imposition of maximum confinement in this case is suspect. To ignore Mr. Cottle's efforts in his own behalf and act solely on the basis of his failure to comply with the court's directive, would place form over substance. It would ignore the

ultimate objective that has been achieved and the fact that, that accomplishment resulted from the efforts of the offender himself. We are here faced with a man who has demonstrated that he is now able to live successfully in the community. The imposition of the maximum sentence at this point in Mr. Cottle's life would be more punitive than corrective in nature. Moreover, it may very well destroy that which has already been accomplished, i. e., his readjustment. We cannot conclude that the legislature, in subparagraph (c), intended that a court should place a greater emphasis upon a perceived offense to its dignity than the basic objectives of the sentencing process.

Thus we conclude that the imposition of a sentence of total confinement upon revocation in this case was in violation of § 1371(c) and therefore must be vacated. Upon remand for resentencing, the court is reminded that it is bound by the directives of § 1371(b). Specifically, the alternatives available "*shall be* the same as were available at the time of the initial sentencing." To ascertain those alternatives and the considerations that control their appropriate application, direction is provided in § 1321(a) and (b).[10]

Accordingly, the Order of the Superior Court affirming the judgment of sentence is reversed, the sentence is vacated and the cause is remanded to the Court of Common Pleas for further proceedings consistent herewith.

KAUFFMAN, J., filed a dissenting opinion in which LARSEN, J., joined.

10. Appellant has asserted that Judge Braig was prejudicially predisposed towards appellant and has requested that a new judge be chosen for the purpose of resentencing. The normal procedure is for the sentencing judge to preside over probation revocation matters. In this case, since the sentencing judge, Judge Levin, had retired, the judge then serving on the criminal motions list, Judge Braig, heard the matter. It was therefore a fortuitous circumstance that Judge Braig heard this matter. We cannot assume that upon remand to the Court of Common Pleas that the cause will be again assigned before Judge Braig. Thus, there is no occasion for us to consider appellant's objection to Judge Braig's further participation at this juncture. If the matter is in fact assigned again to Judge Braig, these objections may then be properly raised and appellant's rights to appeal from such a ruling are preserved.

KAUFFMAN, Justice, dissenting.

Appellant was arrested three times in 1971–1972. From 1972 to 1976 appellant flouted the authority of the court below by failing to report to his probation officer. Under these circumstances, I do not believe that an appellate court should second guess the trial court's exercise of its discretion. Accordingly, I would affirm the judgment of sentence.

LARSEN, J., joins in this dissenting opinion.