J-S13012-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFFERY FLAMER | : | |
| | : | |
| Appellant | : | No. 2144 EDA 2021 |

Appeal from the Judgment of Sentence Entered September 15, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003093-2010

BEFORE:   NICHOLS, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED JULY 11, 2023**

Appellant Jeffery Flamer appeals from the judgment of sentence imposed following the revocation of his probation and resentencing. Appellant challenges the discretionary aspects of his sentence and contends that the trial court failed to provide reasons for a sentence of total confinement and abused its discretion when it failed to consider Appellant's rehabilitative needs. Following our review, we affirm.

The trial court summarized the relevant facts and procedural history of this matter as follows:

> On January 31, 2011, [Appellant] pled guilty to robbery, graded as a felony of the first degree, and one violation of the Uniform Firearms Act (VUFA): § 6105, carrying a firearm as a person not to own or possess firearms, graded as a felony of the second degree. Appellant was sentenced to his negotiated sentence of 2½ to 5 years [of] state incarceration plus 3 years [of] reporting

---

[*] Former Justice specially assigned to the Superior Court.

probation. This court ordered that [Appellant] receive job training and earn his GED while in custody. This court further ordered that upon release, [Appellant] was to seek and maintain employment and stay out of trouble with the law.

On February 7, 2020, a mental health evaluation was performed, at which time [Appellant] was diagnosed with post-traumatic stress disorder and an unspecified personality disorder with narcissistic and paranoid features. The report also indicated that [Appellant] had a history of attention deficit hyperactivity disorder and oppositional defiant disorder, and that the primary focus of long-term treatment should be for his personality defenses. The report further stated [that] much of [Appellant's] provocative behaviors serve a defensive purpose as well, in that he requires an audience in order to act out his insecurities through his grandiose displays. The interviewer has learned anecdotally that [Appellant] often occupies the courtroom engaging in this type of behavior. [Appellant's] problems are deeply ingrained in his personality. On February 25, 2020, [Appellant] appeared before this court for a status hearing regarding his probation. [Appellant's] probation officer Christina Nestel stated that she did not believe [Appellant] was suited for community supervision at this point. The supervision summary dated February 19, 2020[,] indicated that [Appellant] failed to provide GED verification, refused to make payments towards fines and costs, and continued to remain uncooperative. After reviewing [Appellant's] mental health report and reading much of it into the record, this court stated [that] they are also recommending that [Appellant] be supervised by the mental health unit of the probation department so I'll order [Appellant] to be supervised by the mental health [unit] and we'll give this a status date for his compliance with a referral for mental health therapy. This court further stated:

> I'll allow the probation to continue. [Appellant] is to be supervised by the mental health unit of the probation [department]. [Appellant] is to comply with all treatment recommendation and report to the mental health unit as required. He's to undergo random urinalysis and seek and maintain employment. He is to pay $25 per month toward costs and fines, cost and supervision fees and the matter is continued for [a] status [hearing] on May 5th. Those conditions of the sentence that I just mentioned were the same conditions of sentence that I imposed when [Appellant] was sentenced back on January 31st. I also imposed a stay-away order in favor of the victim in this case.

The following month, the courts were closed due to the COVID-19 pandemic. The next status hearing was listed for August 4, 2020. At that time, this court ordered probation to continue but requested an updated summary from the probation department. A summary dated July 28, 2020[,] indicated that [Appellant] had not made contact with the mental health treatment facility in several weeks.

This matter was listed again on January 14, 2021, at which time this court allowed probation to continue even though [Appellant] was still not receiving any mental health treatment. On February 17, 2021, this court conducted another status hearing. The probation summary recommended that probation continue with a status hearing scheduled for 30 days to check on compliance, indicating that [Appellant] had been in contact with his probation officer in the mental health unit but still had failed to receive any mental health treatment. [Appellant's] counsel William Reilly confirmed that [Appellant] had yet to receive any mental health treatment. This court issued a detainer and instructed [Appellant's] counsel to tell [Appellant] that he'll have to get his mental health treatment perhaps in custody since he is refusing to do it from the street.

On September 15, 2021, [Appellant] appeared before this court for a violation hearing. First, this court reviewed the probation summary, which stated, during the course of [Appellant's] probation, he was to be supervised by the mental health unit of the probation department and was not in compliance because he was not in contact with his mental health facility. This report indicates that back in July of 2020, [Appellant] was directed to re-engage with the mental health facility and refused to do so. The summary reported that [Appellant] had two outstanding warrants for a robbery and an incident involving terroristic threats. On April 29, 2021, [Appellant] was shot in the calf, at which time he was taken into custody. Both of his open bills were dismissed on September 9, 2021[,] for lack of prosecution. [Appellant's] probation was scheduled for natural expiration on May 13, 2021; however, [Appellant] committed technical violations prior to its expiration. The probation department recommended that this court revoke [Appellant's] probation, lift the detainer, and sentence him to time-served.

[Appellant] stated that he did an in-take interview for mental health treatment but that "COVID happened" and he did not enroll in any mental health treatment thereafter. He stated that he

enrolled in cosmetology school and then suffered a gunshot wound to the leg.

Anthony Gil, Esquire, on behalf of the Commonwealth, argued that [Appellant] had mental health issues that he failed to address and that he continued to rationalize his own failure to act. Mr. Gil further argued that [this court] should order that [Appellant] engage in some type of mental health treatment, and in such a manner that will force him to do so, but left the sentence to this court's discretion.

[Appellant's] counsel Jena Simonds, Esquire of the Defenders Association of Philadelphia argued that this court needed to conduct a *Grazier* hearing because [Appellant] wanted to represent himself and that he had represented himself before. [Appellant's counsel] argued that she believed her office was backup for [Appellant] during the VOP hearing. The court clerk then reviewed [Appellant's] docket, and identified which lawyer [had] represent[ed Appellant] on each date. The record showed that the Defender Association of Philadelphia had been representing [Appellant] at each listing while he was out on bail.

At [Appellant's] counsel's request, this court then conducted an on-the-record inquiry as to whether [Appellant] should be permitted to represent himself. At the conclusion of questioning, this court denied [Appellant's] request, finding that he did not understand what is necessary to represent yourself and follow the rules of the court. Throughout the hearing, [Appellant] interrupted and spoke over others, and repeatedly claimed he did not understand and was unable to follow along.

[Appellants'] counsel] argued that even though [Appellant] did not get mental health treatment, he did do the intake interview and he was trying to do what he was supposed to do by enrolling in school. [Appellant's counsel] recommended a sentence of time-served and that this court lift any detainers.

[Appellant] stated that he also wanted to receive time served. He stated that he wanted to go back to school and get his career off the ground. [Appellant] stated that he should be given credit for at least trying.

After hearing from all parties, this court found [Appellant] in technical violation of his probation for failure to comply with these specific instructions of the court to get mental health treatment. This court revoked [Appellant's] probation and sentenced him to

- 4 -

6 to 12 months [of] county incarceration plus 3 years [of] reporting probation, with credit for time serve[d] since a detainer was lodged. This court ordered that [Appellant] be paroled directly to a mental health program, with [the] sheriff to transport, and thereafter receive supervision from the mental health unit of the probation department, seek and maintain employment, undergo random urinalysis, and strictly comply with all recommendations of the mental health treatment facility including medication.

After sentencing, [Appellant] continued to ask numerous questions about his sentence, claiming that he did not understand what was going on. Both [Appellant's counsel] and this court attempted to explain his sentence to him several times; however, [Appellant] repeatedly stated that he did not understand. This court then had [Appellant] and his counsel go into a booth so that she could answer any further questions.

On September 27, 2021, [Appellant] filed a motion for reconsideration of sentence. On October 13, 2021, [Appellant] filed a notice of appeal to the Superior Court. On October 14, 2021, [Appellant], through the Defenders Association, filed a motion for early parole, asking this court to vacate the condition that [Appellant] go to a mental health treatment facility with sheriff to transport and instead allow [Appellant] to live with his cousin and receive outpatient mental health treatment at Wedge Juniper.

On December 14, 2021, [Appellant] filed a motion for new counsel, stating that he had a conflict of interest with the Defenders Association. On January 4, 2022, the Defenders Association filed a petition to remand the case to the trial court for a [***Grazier***] hearing on Appellant's request to proceed *pro se* on appeal.

On January 12, 2022, this court ordered that [Appellant] file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On January 13, 2022, this court denied [Appellant's] motion for early parole, citing judicial discretion and [Appellant's] need for mental health treatment. On January 25, 2022, the Defender Association filed a 1925(b) statement.

On February 1, 2022, the Superior Court remanded the matter and ordered that this court conduct a ***Grazier*** hearing to determine whether [Appellant] could proceed *pro se* on appeal. This court listed the matter for a video hearing on March 21, 2022,

- 5 -

after which Court Administration rescheduled the matter for April 4, 2022. On April 4, 2022, when this case was called, this court was informed that [Appellant] had been released from custody on February 15, 2022; therefore, the scheduled video *Grazier* hearing could not take place. That same day, [Appellant] appeared at the courthouse at 12:30 pm and was directed to report immediately to his probation officer directly from the courthouse. He failed to do so and warrant cards were issued. When he was released from custody on February 15, 2022, [Appellant] was transported to Wedge South for treatment; however, the mental health unit was unable to verify [Appellant's] progress or attendance since then because [Appellant] refused to sign an Authorization of Release Form. On April 25, 2022, [Appellant] was taken into custody as a result of the wanted cards issued April 5, 2022. According to the probation summary dated April 28, 2022, [Appellant] appeared unscheduled at the probation department on April 5, 2022, but left after twenty minutes, claiming he had other things to do. On May 19, 2022, this court found [Appellant] in criminal contempt for failure to report to his probation officer from the courthouse on April 4, 2022, . . .

On June 1, 2022, [Appellant] filed another motion for new counsel, once again arguing that he had a conflict with the Defenders Association because they were bar-licensed attorneys. On June 13, 2022, the Superior Court issued an order stating that due to [Appellant's] flight, he had forfeited his right to proceed *pro se* and would continue to be represented by the Defenders Association.[1]

_____

[1] This Court's order stated in relevant part, as follows:

In light of the trial court's April 13, 2022 order indicating that it was unable to conduct a waiver of counsel hearing pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998) due to Appellant's flight, Appellant has forfeited his right to proceed *pro se* and the Defender Association of Philadelphia shall continue to represent Appellant in this appeal.

Order, 6/13/22. Appellant absconded in April of 2022, after the trial court revoked his probation and resentenced him, and after he filed his notice of appeal. Therefore, Appellant's flight was not a factor in the revocation of probation or revocation sentence imposed on September 15, 2021.

Trial Ct. Op., 8/2/22, at 1-8 (formatting altered and footnote and some citations omitted).  The record reflects that Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the follows in issues:

1. A court shall not impose a sentence of total confinement upon revocation of probation unless it finds that: (1) the defendant has been convicted of a new crime; or (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or (3) such a sentence is essential to vindicate the authority of the court.  Where none of these factors applied to Appellant, did not the lower court abuse its discretion when it sentenced him to incarceration?

2. A sentencing court abuses its discretion when it imposes a sentence in excess of what is necessary to address the gravity of the offense, the protection of the community and the defendant's rehabilitative needs.  Where Appellant was not a danger to the community and the court failed to consider Appellant's rehabilitative needs, did not the lower court impose a sentence violative of the Sentencing Code and the norms that underlie the sentencing process?

Appellant's Brief at 3.[2]

Appellant's issues implicate the discretionary aspects of his sentence, and we note that "[t]he right to appellate review of the discretionary aspects of a sentence is not absolute[.]"  *Commonwealth v. Zirkle*, 107 A.3d 127,

---

[2] We note that Appellant raised three additional issues in his Rule 1925(b) statement that the trial court addressed in its Rule 1925(a) opinion. *See* Rule 1925(b) Statement, 1/25/22; Trial Ct. Op., 8/2/22, at 8-18.  However, Appellant has not included those issues in his appellate brief and abandoned those issues on appeal.  Accordingly, we deem those issues waived. *See Commonwealth v. Heggins*, 809 A.2d 908, 912 n.2 (Pa. Super. 2002) ("[A]n issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived." (citation omitted)).

132 (Pa. Super. 2014) (citations omitted). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal. **Commonwealth v. W.H.M., Jr.**, 932 A.2d 155, 163 (Pa. Super. 2007).

As this Court explained in **Commonwealth v. Moury**, 992 A.2d 162 (Pa. Super. 2010), an appellant challenging the discretionary aspects of a sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [708(E)]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).

**Id.** at 170 (formatting altered and citation omitted).

In the instant case, following the revocation of his probation, Appellant filed a timely motion to reconsider and modify his sentence, a timely appeal, and has included a Rule 2119(f) statement in his appellate brief. Accordingly, Appellant is in technical compliance with the requirements to challenge the discretionary aspects of his sentence, therefore, we will proceed to determine whether Appellant has raised a substantial question. **See id.**

The determination of whether there is a substantial question is made on a case-by-case basis, and this Court will grant the appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code;

or (2) contrary to the fundamental norms which underlie the sentencing process. *Id.*

In the instant case, Appellant contends that the trial court failed to consider relevant sentencing factors from 42 Pa.C.S. § 9721(b) and abused its discretion by imposing a sentence of total confinement for technical violations. Appellant's Brief at 10-11. We conclude that Appellant has raised a substantial question for our review. *See Commonwealth v. Derrickson*, 242 A.3d 667, 680 (Pa. Super. 2020) (holding that a claim that the trial court failed to consider sentencing criteria required by 42 Pa.C.S. § 9721(b), including the defendant's rehabilitative needs, presents a substantial question), *appeal denied*, 253 A.3d 213 (Pa. 2021); *Commonwealth v. Crump*, 995 A.2d 1280, 1282 (Pa. Super. 2010) (holding that the imposition of a sentence of total confinement after the revocation of probation for a technical violation of probation raises a substantial question).

Our standard of review is as follows:

> The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment – a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Starr*, 234 A.3d 755, 760-61 (Pa. Super. 2020) (citation omitted).

> The court shall not impose a sentence of total confinement upon revocation unless it finds that: (1) the defendant has been

- 9 -

convicted of another crime; or (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or (3) such a sentence is essential to vindicate the authority of the court.

42 Pa.C.S. § 9771(c) (formatting altered). Before the trial court may revoke probation, the court must find, "based on the preponderance of the evidence, that the probationer violated a specific condition of probation or committed a new crime[.]" *Commonwealth v. Parson*, 259 A.3d 1012, 1019 (Pa. Super. 2021) (citations omitted).[3]

> In addition, in all cases where the court resentences an offender following revocation of probation[,] the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed and failure to comply with these provisions shall be grounds for

---

[3] In *Commonwealth v. Foster*, 214 A.3d 1240 (Pa. 2019), our Supreme Court examined the statutory framework governing probation revocations and concluded that "a court may find a defendant in violation of probation only if the defendant has violated one of the specific conditions of probation included in the probation order or has committed a new crime." *Id.* at 1250; *see also Commonwealth v. Koger*, 15 WAP 2022, 2023 WL 4193028 (Pa. 2023); 42 Pa.C.S. § 9754(b). "To insure that general condition is met, or to assist the defendant in meeting that general condition, the order must also include certain "specific conditions" of probation. *Foster*, at 1250; *see also Koger*, at 2023 WL 4193028 at *5; 42 Pa.C.S. § 9763.

> Only upon the violation of any of the specified conditions in the probation order (general or specific) may a court revoke the defendant's probation. In other words, a court may find a defendant in violation of probation only if the defendant has violated one of the specific conditions of probation included in the probation order or has committed a new crime. The plain language of the statute does not allow for any other result.

*Foster*, 214 A.3d at 1250 (citations and quotation marks omitted). Here, the record reflects that the trial court ordered mental health treatment as a specific condition of Appellant's probation. *See* N.T., 2/25/20, at 7.

vacating the sentence or resentence and resentencing the defendant.

***Commonwealth v. Colon***, 102 A.3d 1033, 1044 (Pa. Super. 2014) (citation omitted and formatting altered); 42 Pa.C.S. § 9721(b); ***see also*** Pa.R.Crim.P. 708[(D)(2)] (indicating at the time of sentence following the revocation of probation, "[t]he judge shall state on the record the reasons for the sentence imposed."). However, "[the] trial court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." ***Colon***, 102 A.3d at 1044 (citation omitted). Moreover, "our review is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing." ***Parson***, 259 A.3d at 1019 (citation omitted and formatting altered); ***see also*** 42 Pa.C.S. § 9771(b).

Appellant first argues that the trial court abused its discretion by making only a "blanket statement" that incarceration was needed to vindicate the authority of the court and that "Appellant did nothing to slight the court's authority." Appellants' Brief at 17.

As noted, the trial court ordered mental health treatment as a condition of Appellant's probation. Although Appellant failed to satisfy this condition, the trial court initially provided Appellant multiple opportunities to obtain such treatment while he remained on probation. However, Appellant failed to enroll

in and obtain mental health treatment, and Appellant's failure to engage in mental health treatment constituted a violation of the terms and conditions of his probation. The trial court revoked Appellant's probation, and as noted, resentenced Appellant to a term of six to twelve months of incarceration followed by three years of probation with immediate parole to a mental health facility. The trial court stated:

> This record is absolutely clear that this sentence is absolutely necessary to vindicate the authority of the [c]ourt, as well as to protect society from [Appellant], given that he had a violent robbery. He was charged with two new cases he says against his girlfriend, those were withdrawn.[4] But [Appellant] has serious mental health issues that have gone on for a long period of time that he has not addressed. And he needs to address his mental health issues.

N.T., 9/15/21, at 45.

> In its opinion, the trial court explained:

> [Appellant] was given multiple opportunities to rectify this situation but chose to blatantly disregard this [c]ourt's order. This [c]ourt conducted status hearings on August 4, 2020, January 14, 2021, and February 17, 2021. Each time, this [c]ourt allowed [Appellant's] probation to continue in order to give [Appellant] more time to comply, and each time [Appellant] failed to do so. At the violation hearing, [Appellant] admitted that he did not get any mental health treatment and knew that he was ordered to do so. Based upon [Appellant's] conduct, this [c]ourt properly found [Appellant] in technical violation and sentenced him to 6 to 12

---

[4] As the trial court pointed out, these charges were later withdrawn. However, we note that a sentencing court may consider a defendant's prior arrests which did not result in convictions, as long as the court recognizes that the defendant was not convicted. ***Commonwealth v. Johnson***, 481 A.2d 1212, 1214 (Pa. Super. 1984).

months county incarceration plus 3 [years of] reporting probation in order to vindicate the authority of the court.

Trial Ct. Op., 8/2/22, at 18.

On this record, the trial court concluded that Appellant had serious mental health issues that required treatment, made such treatment a specific condition of probation, addressed Appellant's repeated failures to obtain mental health treatment, and initially afforded Appellant more time to obtain mental health treatment while remaining on probation. N.T., 9/15/21, at 45. Further, the trial court explained that probation had failed as a mode of rehabilitation, Appellant demonstrated that he was unfit for supervision, and as such, found Appellant posed a threat to society. *Id.*

On this record, we conclude that Appellant's argument that the trial court made merely a blanket statement concerning vindication is meritless. The trial court explained that Appellant violated the specific conditions of his probation, provided its rationale for revoking Appellant's probation and imposing a sentence of total confinement, and it set forth the reasons why Appellant's sentence was necessary to vindicate the authority of the court. We conclude that Appellant is due no relief.[5]

_____

[5] Appellant also argues that the decision in *Commonwealth v. Cottle*, 426 A.2d 598 (Pa. 1981), supports his claim that a sentence of incarceration was unwarranted. *See* Appellant's Brief at 17. In *Cottle*, the appellant voluntarily appeared before the trial court during the trial of another defendant. *Cottle*, 426 A.2d at 599. Although the appellant was admonished to remain silent by the trial court, he approached the bench and confessed to a robbery for which he had never been charged. *Id.* Because of his forthrightness and honesty,
*(Footnote Continued Next Page)*

Appellant next argues that the trial court abused its discretion by failing to consider his rehabilitative needs. Appellant's Brief at 20-22.

As noted previously, the trial court sentenced Appellant to six to twelve months of incarceration followed three years of reporting probation. ***See***

---

the trial court imposed a sentence of six to twenty-three months of incarceration followed by five years of probation. ***Id.*** For three years, the appellant complied with the terms of his probation. However, at one point, the appellant missed scheduled meetings with his probation officer. ***Id.*** The trial court revoked the appellant's probation and imposed the statutory maximum sentence of total confinement. ***Id.*** Although this Court affirmed, the Pennsylvania Supreme Court vacated the statutory maximum sentence and remanded for resentencing. The Supreme Court explained:

> It is our judgment that under these unique facts it cannot be said that the imposition of the maximum sentence was 'essential' to vindicate the court's authority.
>
> . . . To ignore Mr. Cottle's efforts in his own behalf and act solely on the basis of his failure to comply with the court's directive, would place form over substance. It would ignore the ultimate objective that has been achieved and the fact that, that accomplishment resulted from the efforts of the offender himself. We are here faced with a man who has demonstrated that he is now able to live successfully in the community. The imposition of the maximum sentence at this point in Mr. Cottle's life would be more punitive than corrective in nature. Moreover, it may very well destroy that which has already been accomplished, *i.e.*, his readjustment.

***Id.*** at 602. Unlike the appellant in ***Cottle***, Appellant never sought the court-ordered mental health treatment while on probation. Rather, Appellant has continuously failed to obtain mental health treatment and demonstrated that he is unwilling or unable to meet the conditions of his probation. ***See*** Trial Ct. Op., 8/2/22, at 18. The trial court concluded that a sentence of total confinement was necessary to vindicate the authority of the court and provide for Appellant's rehabilitative needs which included mental health care. ***See*** N.T., 9/15/21, at 45. Clearly, the circumstances in ***Cottle*** are distinguishable from the instant case, and cannot be applied to disturb the trial court's revocation sentence. ***See Colon***, 102 A.3d at 1044; 42 Pa.C.S. § 9771(c).

Sentencing Order, 9/15/21, at 1-2. The trial court gave Appellant credit for time served with immediate parole to a mental health treatment facility. *See id.* Prior to imposing sentence, the trial court considered the factors set forth in 42 Pa.C.S. § 9721(b), including the protection of the public, the gravity of Appellant's crimes in relation to the impact on the life of the victim and the community, and Appellant's rehabilitative needs. Indeed, the trial court repeatedly addressed the fact that Appellant's mental health issues are paramount in his rehabilitation, and the trial court noted that consistent attempts to allow Appellant to obtain such treatment while on probation had failed. N.T., 9/15/21, at 7, 14, 26, 37.

The trial court explained:

This [c]ourt had given [Appellant] multiple opportunities to work on his issues while out on probation. Unfortunately, [Appellant] chose not to do so and instead was arrested for a robbery and later arrested again for making terroristic threats on SEPTA, a Philadelphia public transportation authority. Revocation and a county sentence with immediate parole to a mental health treatment facility was an appropriate sentence under the circumstances since [Appellant] demonstrated that he was unwilling to do so on his own. As stated above, there is no requirement that [the trial court] impose the minimum possible sentence. Rather, based upon [Appellant's] ongoing failure to comply with the terms and conditions of probation as well as his serious mental health issues that had yet to be adequately addressed, this [c]ourt found it appropriate to sentence [Appellant] to a term of 6 to 12 months county incarceration plus 3 years reporting probation with parole to a mental health facility.

Trial Ct. Op., 8/2/22, at 21 (formatting altered).

While acknowledging that the charges were withdrawn, the trial court noted that the Commonwealth charged Appellant with robbery and making

- 15 -

terroristic threats while he was on probation. Moreover, although the trial court provided multiple opportunities for Appellant to obtain mental health treatment while he remained on probation, Appellant refused to do so. ***See*** Trial Ct. Op., 8/2/22, at 18; N.T., 9/15/21, at 6-17; 45. The trial court concluded that Appellant's rehabilitative needs necessitated mental health treatment, and Appellant repeatedly demonstrated his refusal to satisfy this condition of his probation. ***See*** N.T., 9/15/21, at 6-17, 45. As such, the trial court concluded that the sentence of was necessary to achieve this goal. ***See*** N.T., 9/15/21, at 45.

For these reasons, we conclude that the trial court amply considered Appellant's rehabilitative needs including mental health treatment. ***See*** ***Derrickson***, 242 A.3d at 680; 42 Pa.C.S. § 9721(b). Moreover, the record reflects that the trial court stated its reasons for the sentence imposed and its consideration of the facts of the case and Appellant's character, and we discern no abuse of discretion. ***See Colon***, 102 A.3d at 1044; 42 Pa.C.S. § 9721(b); Pa.R.Crim.P. 708(D)(2). Accordingly, Appellant is due no relief, and we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>7/11/2023</u>