J-S41019-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                                  :           PENNSYLVANIA
                                                                    :

                 v.                       :

TYQUAN ATKINSON                  :

                Appellant        :        No. 506 EDA 2025

Appeal from the Judgment of Sentence Entered March 12, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  MC-51-CR-0011938-2020

BEFORE:    BOWES, J., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY BECK, J.:              **FILED FEBRUARY 27, 2026**

Tyquan Atkinson ("Atkinson") appeals nunc pro tunc from the judgment of sentence imposed by the Philadelphia County Municipal Court ("municipal court") following the revocation of his probation.[1]  He contends the municipal court abused its discretion by imposing an excessive aggregate sentence of three to six years' incarceration after considering an impermissible sentencing factor, not considering mitigating evidence, and failing to take into account Atkinson's rehabilitative needs.  Upon review, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] In Philadelphia, municipal court judges have jurisdiction over criminal offenses for which no prison term may be imposed or which are punishable by imprisonment for a term of not more than five years.  42 Pa.C.S. § 1123(a)(2). Municipal court judges exercising jurisdiction under section 1123 "shall have the same jurisdiction in probation and parole arising out of sentences imposed by them as judges of the court of common pleas."  42 Pa.C.S. § 1123(a)(2).

**Facts and Procedural History**

Atkinson's original probation stemmed from charges he incurred during a lengthy incarceration at Philadelphia Industrial Correctional Center awaiting trial for homicide in another matter.  Ultimately, in April 2022, a jury acquitted Atkinson of homicide and other charges.  However, Atkinson continued to face the consequences of his conduct during his pretrial incarceration, which resulted in probation in two separate cases.

In the first—the underlying case in this matter—a correctional officer found an eight-inch shank in Atkinson's waistband in January 2020.  Following a nonjury trial, the municipal court found Atkinson guilty of making repairs, selling, or otherwise dealing in, using, or possessing an offensive weapon and introducing a weapon into a correctional facility which may be used for escape.[2]  On June 15, 2022, the municipal court imposed concurrent one-year terms of probation for each offense.

A second set of charges stemmed from Atkinson's possession of a cell phone on two occasions.  Atkinson pled guilty to two counts of contraband-possession of a telecommunication device by an inmate.[3]  On December 2, 2022, the municipal court sentenced Atkinson to two years of reporting

---

[2]  **See** 18 Pa.C.S. §§ 908(a), 5122(a)(1).  The municipal court acquitted him of possession of an instrument of crime with intent to employ it criminally. **See id.** § 907(a).

[3]  **See id.** § 5123(c)(2).

probation consecutive to the period of probation imposed for his possession of the shank.

Following his release from incarceration, while serving probation for the shank incident, Atkinson was found in possession of a firearm known as a "ghost gun." N.T., 3/12/2024, at 16. On February 20, 2023, during a stop of a vehicle in which Atkinson was a passenger, law enforcement searched Atkinson's backpack and found a Polymer 180 firearm without a serial number loaded with twelve live rounds, including one in the chamber. *Id.* at 8-10. Atkinson fled the scene but was caught by police. *Id.* at 9-10. On December 13, 2023, Atkinson pled guilty in federal district court to possession of ammunition by a felon[4] and was sentenced to eighteen months in federal prison followed by three years of supervised release. *Id.* at 11.

The state probation office filed a notice of probation violation based upon the federal conviction. The municipal court held a *Gagnon I* hearing[5] on March 1, 2024, and a *Gagnon II* hearing on March 12, 2024. The probation officer, Jose Fanel, provided testimony consistent with the above. N.T.,

_____

[4] 18 U.S.C. § 922(g)(1).

[5] *See Gagnon v. Scarpelli*, 411 U.S. 778 (1973); *see also Commonwealth v. Ferguson*, 761 A.2d 613 (Pa. Super. 2000) (explaining that when a probationer is detained based on an alleged probation violation, due process requires a *Gagnon I* prerevocation hearing to determine whether there is probable cause that the probationer committed a violation, followed by a second more comprehensive *Gagnon II* revocation hearing wherein trial court determines whether to revoke probationer's probation).

3/12/2024, at 8-11. Atkinson and the Commonwealth stipulated that "a direct violation[] of probation has occurred." *Id.* at 12.

The Commonwealth requested reimposition of probation to run consecutively to his federal incarceration sentence. *Id.* The municipal court asked the Commonwealth why it would recommend probation when it originally requested a sentence of eighteen to thirty-six months' incarceration at the original June 15, 2022 sentencing in the shank case, the municipal court chose to impose a year of probation, and Atkinson committed more crimes. *Id.* at 13-15. The prosecutor responded that Atkinson was already incarcerated for the federal charges and its recommendation was within the guidelines. *Id.* at 13, 15. After the municipal court ascertained that the maximum penalty for the original charges was an aggregate term of ten years' incarceration, defense counsel argued that the municipal court had no basis for this "massive upward departure." *Id.* at 19. The municipal court responded:

> [I]f I understand things correctly, [Atkinson] was looking down the barrel of a murder charge with a gun, of which he … was acquitted. He sat in jail for 38 months waiting for … his day in court, 38 months. Notwithstanding the fact that he committed three crimes while in custody, but he sat in jail … and then he is placed on probation and within 4 months of being placed on probation on the second charge, he finds a gun in his possession. How can you tell me that [Atkinson] is amenable to probation? … I can't possibly fathom what probation means to him. If I sat in jail for 38 months waiting trial, and then I was let out, and I know I'm on probation, and … I got a loaded gun, a ghost gun, in these times, what kind -- what possible -- what -- why is that not a basis?

*Id.* at 19-20.

Defense counsel argued that the court could not increase Atkinson's penalty based upon the homicide case and that giving him any incarceration is disproportionate to his offense and at odds with the Commonwealth's request for probation. *Id.* at 21. The defense requested termination of probation, arguing that state supervision was a waste of judicial resources while he was subject to federal supervision. *Id.*

In Atkinson's allocution, he explained that "it's just dangerous times outside, that's all," although he acknowledged it was not an excuse for "carrying a gun." *Id.* at 22. Sarah Morris, the director of the Youth Art & Self-Empowerment Project, testified that Atkinson "was a model employee" when he worked for the organization between June 2022 and February 2023, and had a job waiting for him when he was released from prison. *Id.* at 23-25. Atkinson's mother, Stacy Atkinson, expressed her support for her son and stated that he could work for her business when he was released. *Id.* at 25-26.

The municipal court asserted that it had mentioned Atkinson's homicide trial because it believed that "the process should have been … a strong education process for him," particularly when the court had already given him a "second chance" on probation. *Id.* at 26. From the court's perspective, "the circumstances upon which he was incarcerated and what he was being faced with" should have made it "clear" that while he "on probation… he

shouldn't be anywhere near or around people with guns or having a gun." *Id.* Given that the court had already sentenced him to probation twice, it saw no indication that Atkinson "sees the light" and was "amenable to probation." *Id.* at 27. His conduct, the court found, "in this day and age with gun violence the way it is," is "a huge threat to all of us, to every citizen of … the Commonwealth of Pennsylvania and the City of Philadelphia." *Id.* It revoked probation and purported to impose "what the Commonwealth initially asked for" and the court "did not grant" at Atkinson's original sentencing hearing: eighteen to thirty-six months of incarceration, followed by two years of reporting probation, for each misdemeanor, to run consecutively to each other and to his current federal sentence. *Id.* at 27-28.[6] The municipal court found Atkinson not to be in violation of the terms of his probation in his two cell phone possession cases because his probationary terms in these two cases did not commence until June 15, 2023.

Atkinson initially filed a notice of appeal without filing a post-sentence motion; his counsel inadvertently filed a motion to seek reconsideration of the sentence on the dockets for the cell phone cases. After a change in counsel, Atkinson withdrew the appeal docketed at 1136 EDA 2024. On September 13, 2024, the municipal court reinstated his rights to file a post-sentence

_____

[6] For purposes of completeness, we note that the Commonwealth originally asked for half the time the court imposed here, as it requested an eighteen to thirty-six month on each count to run concurrently. *See* Commonwealth's Sentencing Memorandum, 6/14/2022, at 9.

motion and notice of appeal nunc pro tunc pursuant to the Post Conviction Relief Act. That same day, Atkinson filed a post-sentence motion arguing that his sentence was more than necessary to protect the public and rehabilitate him, that the court overweighed the homicide matter for which he was acquitted, and that his family and community support, work history, and job prospects demonstrated that he was amenable to rehabilitation. Post-Sentence Motion, 9/13/2024, at ¶¶ 10-17. On October 9, 2024, the municipal court granted Atkinson's rule to show cause for a hearing on his post-sentence motion and scheduled a hearing in December. Municipal Court Order, 10/9/2024, at 1.

After the Supreme Court decided **Commonwealth v. Berry**, 323 A.3d 641 (Pa. 2024), Atkinson filed a supplemental motion on October 12, 2024. This time he challenged the excessiveness of his sentence, inadequate consideration of mitigating factors and his rehabilitative needs, and improper consideration of his arrest that resulted in acquittal. **See** Supplemental Post-Sentence Motion, 10/12/2024, at ¶¶ 6, 9, 11.

Because the municipal court did not expressly grant reconsideration or vacate the sentence in its October 9 order, Atkinson's time for appeal expired on October 13, 2024, before the court ruled on the motion or Atkinson filed a

notice of appeal.[7] Atkinson filed a second timely PCRA petition on December 12, 2024, seeking reinstatement of his post-sentence and appellate rights nunc pro tunc for counsel's own per se ineffective assistance by failing to file a timely appeal. PCRA Petition, 12/12/2024, at 4-6. The court granted PCRA relief and reinstated his appellate rights in a separate order. *See* Municipal Court Order, 2/4/2025, at 1.

Atkinson filed a notice of appeal nunc pro tunc. Both Atkinson and the municipal court complied with Pennsylvania Rule of Appellate Procedure 1925.

_____

[7] *See* Pa.R.Crim.P. 708(E) (filing a motion to modify sentence does not toll 30-day appeal period); Pa.Rs.A.P. 903(a) (an appellant must file a notice of appeal within thirty days of entry of order), 1701(b)(3)(requiring court to expressly grant reconsideration within timeframe of rules); *Commonwealth v. Duffy*, 143 A.3d 940, 942, 942 n.3 (Pa. Super. 2016) (holding that notice of appeal from resentencing order must be filed within thirty days of imposition of sentence in open court and filing of motion to modify sentence following revocation of probation does not toll appellate period); *Commonwealth v. Burks*, 102 A.3d 497, 500 (Pa. Super. 2014) (holding that rule 708 continues to govern right to modify sentence and appellate rights after reinstatement of rights nunc pro tunc via a PCRA petition).

After the period to appeal expired, Atkinson filed a motion for leave to withdraw his original and supplemental post-sentence motion. Atkinson's Motion for Leave, 12/14/2024, at 1. On December 17, 2024, the municipal court purported to grant Atkinson leave to withdraw his post-sentence motion and the supplemental motion without prejudice. *See* Municipal Court Order, 12/17/2024, at 1. However, this order was null and void, as the municipal court was divested of jurisdiction by this point. *See* 42 Pa.C.S. § 5505; *Commonwealth v. Coleman*, 721 A.2d 798, 799 (Pa. Super. 1998) (sentencing court has thirty days from imposition of sentence to modify sentence) (citations omitted). It also was unnecessary, as Atkinson's filing of the motions in accordance with the order allowing him to do so nunc pro tunc preserved any issues presented therein for appeal, notwithstanding the municipal court's failure to rule upon the motions prior to losing jurisdiction. *See Commonwealth v. Swope*, 123 A.3d 333, 337 n.16 (Pa. Super. 2015).

## Issues on Appeal

Atkinson raises the following issue on appeal:

Was the [violation of probation] sentence of total state incarceration excessive and an abuse of discretionary aspects of sentencing, for the following reasons:

1. [i]t was entered with partiality and ill-will as it impermissibly considered a homicide arrest that culminated in an acquittal by a jury;

2. it was a misapplication of the law as it impermissibly considered a homicide arrest that culminated in an acquittal by a jury;

3. it overrode the law and appellant's right to the presumption of innocence and [d]ue [p]rocess in another criminal matter, pursuant to the Federal and Pa Constitutions, when it impermissibly punished appellant for a homicide arrest that culminated in an acquittal by a jury;

4. it was manifestly unreasonable as it was more than the probation that was requested by the Commonwealth;

5. it was more than necessary to rehabilitate the appellant, who has meaningful and excellent work history and two employment opportunities awaiting when released from custody, and who is amenable to community supervision and has potential for complete rehabilitation; [and]

6. it was excessive for an appellant who enjoys a tremendous familial and community support system, and who is amenable to community supervision and has potential for complete rehabilitation?

Atkinson's Brief at 4.

## Petition for Review of Discretionary Aspects of Sentence

"An appellant wishing to appeal the discretionary aspects of a probation-revocation sentence has no absolute right to do so but, rather, must petition this Court for permission." ***Commonwealth v. Kalichak***, 943 A.2d 285, 289

(Pa. Super. 2008). An appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by: (1) timely filing a notice of appeal; (2) properly preserving the issue at sentencing or in a post-sentence motion; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal of the discretionary aspects of a sentence; and (4) presenting a substantial question that the sentence appealed is not appropriate under the Sentencing Code by advancing a colorable argument that the sentence is inconsistent with a specific provision of the Sentencing Code, contrary to the fundamental norms underlying the sentencing process, or otherwise incongruent with 42 Pa.C.S. § 9781(b). ***Commonwealth v. Schroat***, 272 A.3d 523, 527 (Pa. Super. 2022).

Atkinson has satisfied all requirements for invoking our jurisdiction. He timely appealed following the order reinstating his appellate rights nunc pro tunc. He raised the claims in his post-sentence motion that he now seeks for us to review on appeal. ***See*** Post-Sentence Motion, 9/13/2024, at ¶¶ 10-17; Supplemental Post-Sentence Motion, 10/12/2024, at ¶¶ 6, 9, 11; ***see also*** N.T., 3/12/2024, at 19, 21. And his brief includes a Rule 2119(f) concise statement, wherein he presents two substantial questions for our review: (1) the municipal court's alleged consideration of his arrest not resulting in conviction in fashioning his sentence, and (2) the sentencing court inadequately considered mitigating factors and imposed an excessive

sentence that is more than is necessary to protect the public, vindicate the decedent's family and rehabilitate the appellant.  *See Commonwealth v. Berry*, 323 A.3d 641, 654 (Pa. 2024) (holding that "sentencing court committed an error of law when it relied upon prior arrests as a sentencing factor"); *Commonwealth v. Pacheco*, 227 A.3d 358, 376 (Pa. Super. 2020) ("[A]n allegation that the court considered an impermissible sentencing factor raises a substantial question."); *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) ("[A]n excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question.").  As such, we proceed to review his appellate issues on the merits.

**Standard of Review**

Imposing a new sentence following the revocation of probation is within the sound discretion of the sentencing court.  *See Commonwealth v. Starr*, 234 A.3d 755, 760-61 (Pa. Super. 2020).  Absent an abuse of that discretion, we will not disturb the resentence on appeal.  *Id.* "An abuse of discretion is more than an error in judgment—a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.* (citation omitted).  "[W]hen a defendant reappears before the court for sentencing proceedings following a violation of the mercy bestowed upon him in the form of a probationary sentence," the court is "already fully informed

- 11 -

as to the facts and circumstances of both the crime and the nature of the defendant." ***Commonwealth v. Pasture***, 107 A.3d 21, 27-28 (Pa. 2014).

> We emphasize a trial court does not necessarily abuse its discretion in imposing a seemingly harsher post-revocation sentence where the defendant received a lenient sentence and then failed to adhere to the conditions imposed on him. In point of fact, where the revocation sentence was adequately considered and sufficiently explained on the record by the revocation judge, in light of the judge's experience with the defendant and awareness of the circumstances of the probation violation, under the appropriate deferential standard of review, the sentence, if within the statutory bounds, is peculiarly within the judge's discretion.

***Id.*** at 28 (citation omitted).

In addition to the abuse of discretion standard, our review is confined by section 9781(c) and (d) of the Sentencing Code:

> **(c) Determination on appeal.--**The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> > (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
> >
> > (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
> >
> > (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.
>
> In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.
>
> **(d) Review of record.--**In reviewing the record the appellate court shall have regard for:
>
> > (1) The nature and circumstances of the offense and the history and characteristics of the defendant.

- 12 -

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(c), (d).

**Legal Standards Regarding Resentencing**

Following the revocation of Atkinson's probation for his direct violation, the municipal court had available to it the same sentencing alternatives "as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation." 42 Pa.C.S. § 9771(b); *see also id.* § 9721(a) (directing court to consider and select one or more sentencing alternatives to impose consecutively or concurrently, including an order of probation, a determination of guilt without further penalty, partial or total confinement, and a fine). It was limited only "by the maximum sentence that it could have imposed originally at the time of the probationary sentence." *Pasture*, 107 A.3d at 27-28. Additionally, the court must abide by the considerations for imposing a sentence of total confinement set forth in section 9721(b). *Commonwealth v. Derry*, 150 A.3d 987, 994 (Pa. Super. 2016); *see* 42 Pa.C.S. § 9721(b) (directing court to consider the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant when imposing a sentence of total confinement). The court must state on the

record the reasons for the sentence imposed following revocation, *see* Pa.R.Crim.P. 708(D)(2), but its explanation need not be as elaborate as the initial sentencing. *Pasture*, 107 A.3d at 27-28.

As our Supreme Court has recognized, the General Assembly mandated that the Pennsylvania Commission on Sentencing "adopt guidelines for resentencing that the sentencing court shall consider when resentencing an offender following revocation of probation." *Commonwealth v. Simmons*, 262 A.3d 512, 525 (Pa. 2021) (citing 42 Pa.C.S. § 2154.4). The initial Resentencing Guidelines applied to revocations of probation for all offenses committed on or after January 1, 2020, but prior to January 1, 2021. *See* 204 Pa. Code § 307.2(b)(1). They require a court to state its reasons for revocation and the sentence imposed, and where the sentence is outside of the guidelines to explain the reason for its deviation. *See* 42 Pa.C.S. § 9721(b); 204 Pa. Code § 307.2(a), (d). For a conviction violation[8] (commonly known as a direct violation) resulting in probation revocation, the resentencing guidelines begin with the initial sentencing guidelines and increase the prior record score by one category. 204 Pa. Code § 307.3(b)(1) (7th Ed., effective 1/1/2020 to 12/31/2020).

**Atkinson's Arguments**

---

[8] *See* 204 Pa. Code § 307.1 (defining conviction violation as commission of a new offense during the period of probation, resulting in a conviction for a misdemeanor or felony, whether or not judgment of sentence has been imposed) (internal footnote omitted).

Atkinson contends that the municipal court abused its discretion by imposing "a completely punitive and excessive sentence," considering his homicide arrest despite his acquittal, and ignoring the mitigation evidence he presented. Atkinson's Brief at 32. He argues that a "consecutive-in-nature" incarceration sentence followed by probation is unreasonable, excessive, punitive, and outside sentencing norms because "it was much more than necessary rehabilitate [him], protect the public[,] and vindicate the authority of the lower court." *Id.* at 15, 18-21. He emphasizes the Commonwealth's probation recommendation and contends the municipal court "categorically disregarded the material evidence that [he] is amenable to treatment and community supervision," such as the testimony of his former employer and his mother, which demonstrated that he had community and familial support and two job prospects. *Id.* at 25. Under these circumstances, Atkinson argues, the court's imposition of a state sentence "indicates its ill-will and partiality toward" him and its desire to punish him for his homicide acquittal. *Id.* at 25-26. Atkinson claims the court's ill-will, desire to punish, and faulty conclusion that he could not be supervised in the community was further evidenced by its statement "in disbelief and partial dismay" that Atkinson "was looking down the barrel of a murder charge with a gun" and sat in jail for "38 months." *Id.* at 31 (quoting N.T., 3/12/2024, at 20). Atkinson argues that the municipal court violated *Berry* by considering his homicide acquittal when fashioning his sentence and violated his due process rights by indirectly

reversing the jury's verdict and ignoring his presumption of innocence and double jeopardy rights. *Id.* at 22, 25-26, 30.

**Analysis**

As Atkinson correctly recognizes, a defendant's arrest history, without resultant convictions, is an impermissible factor for courts to consider at sentencing. *Berry*, 323 A.3d at 655. In *Berry*, a sentencing court imposed a sentence for sexual abuse that departed significantly upward from the standard guideline sentencing range despite Berry's prior record score of zero. *Id.* at 649-52. While the court acknowledged that Berry had no prior convictions or juvenile adjudications, the court explained that it was "taking into account" Berry's previous contacts with the criminal justice system nonetheless, insinuating that Berry's prior record score of zero was an "anomaly." *Id.* at 651-52. Our Supreme Court determined that the sentencing court erred by relying upon prior arrests that did not result in convictions as a sentencing consideration. As it explained, "evidence of a defendant's arrest record is inadmissible and irrelevant in nearly every criminal law context[,]" including sentencing, as "a sizeable percentage of arrests do not lead to convictions." *Id.* at 648, 653 (citation omitted). "The fact of an arrest may generate speculation, but ultimately means nothing." *Id.* at 654. The *Berry* Court concluded that the decision to impose a sentence of incarceration must be based on evidence with probative value, and without a conviction, the mere fact that a person has been arrested has none. *Id.*

The Court observed that it similarly recognized in *Commonwealth v. Cottle* that the "decision to revoke probation" and impose a "revocation sentence of incarceration" must "be based on evidence of probative value," and therefore cannot be supported by the fact that a probationer was "subject to an arrest while on probation." *Id.* at 654 (*citing Commonwealth v. Cottle*, 426 A.2d 598, 601 (Pa. 1981)).

Our review of the record in the instant case does not support Atinkson's claim that the municipal court ran afoul of *Berry* (or *Cottle*). Neither the municipal court's comments at sentencing nor its Rule 1925(a) opinion indicated that the court considered Atkinson's homicide arrest as a factor to justify incarcerating him or in calculating the length of his sentence. As the municipal court points out, it had already chosen to sentence Atkinson to probation twice in June and December 2022, even doing so over the Commonwealth's objection, after Atkinson had been acquitted of the homicide charges in April 2022. Municipal Court Opinion, 4/21/2025, at 6-7. It was only when Atkinson possessed a loaded ghost gun and resisted arrest by fleeing that the municipal court decided that Atkinson was not amenable to probation and needed a state sentence of incarceration on top of his federal sentence. *Id.* The court emphasized that it had given Atkinson a chance with probation twice, but Atkinson chose to disregard the court's recent admonishment at his December 2022 sentencing hearing and committed "his most serious offense to date" several months later. *Id.* at 8.

The court explained that while it "found some evidence of mitigation" from the testimony of the probation officer and Atkinson's former employer and mother, Atkinson

> continued to show no true effort to be rehabilitated despite the sincere testimony of the above individuals who testified on his behalf. Despite having twice given [Atkinson] probationary sentences, the second of which was followed by a strong admonition by [the municipal court, Atkinson] only weeks later was stopped and found to be in possession of a ghost gun with 11 live bullets, including one in the firing chamber. [Atkinson's] background demonstrated a persistent and disturbing pattern of disregarding laws, law enforcement officials, prison rules, aggressive and physical interactions while incarcerated, and most recently of possessing illegal firearms and fleeing police.

*Id.* at 11. The court contended that its sentence was "within the sentencing guidelines for this offense"[9] and less than the maximum sentence that it could have imposed. *Id.* at 12. It defended the consecutive nature of the sentences as being within its discretion and "given after careful consideration of all appropriate factors including the severity of the offense, [Atkinson's]

_____

[9] Neither the completed Pennsylvania Sentencing Guideline forms nor the transcript from Atkinson's June 2022 sentencing were included in the certified record. Atkinson's arguments below and on appeal do not mention, let alone discuss, the Resentencing Guidelines, and he does not challenge the municipal court's assertion. The lone mention of the Resentencing Guidelines appears in the Scope and Standard of Review section of Atkinson's Brief. *See* Atkinson's Brief at 2 (citing 42 Pa.C.S. § 9781(c)(3) (directing this Court to vacate an "unreasonable" sentence outside of the sentencing guidelines). He makes no argument that would support our consideration of whether his sentence was, in fact, outside of the guidelines. As such, we do not consider this further. *See* Pa.R.A.P. 2119(a)-(c); *see also Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) ("This Court will not act as counsel and … develop arguments on behalf of an appellant.").

amenability to rehabilitation, [Atkinson's] likelihood of committing another crime, and most importantly, the safety and protection of the community." *Id.* at 13.

None of the court's comments identified by Atkinson in his brief support his argument that the sentence imposed was to punish him for the crimes the jury acquitted him of committing. Indeed, the comments are consistent with the court's explanation at the hearing. After Atkinson's counsel protested at the hearing regarding the court's mention of Atkinson's prior murder charges, the court explained that it mentioned Atkinson's prior charges because it believed that the experience of being incarcerated for a lengthy period awaiting a homicide trial, finally being acquitted by a jury and released, and then being on probation for crimes he committed during his thirty-eight-month incarceration, would have motivated Atkinson to forgo criminal activity, especially carrying a ghost gun. *See* N.T., 3/12/2024, at 26. Neither *Berry* nor *Cottle* require a court to sentence a defendant in a vacuum. Instead, they prohibit drawing an inference adverse to the defendant from the mere fact of an arrest. *See Berry*, 323 A.3d at 652 (mere fact that Berry had prior experiences with the criminal justice system—an impermissible factor—cannot undercut his prior record score of zero); *Cottle*, 426 A.2d at 601 (court erred by imposing a maximum incarceration sentence for technical violations of probation, in part, because the probationer had been arrested during probation and without establishing any of the statutory criteria for sentencing

a probationer to incarceration upon revocation). The municipal court's focus was not on the unproven conduct, but on Atkinson's experience of being incarcerated and facing serious charges, followed by the decision to carry a ghost gun after finally regaining his liberty, subject to the supervision of probation. Furthermore, unlike the technical violations at issue in *Cottle*, which required consideration of more subjective factors to incarcerate, section 9771(c) authorized the municipal court to select incarceration because Atkinson had been convicted of another crime. 42 Pa.C.S. § 9771(c).

The court's comments at sentencing and in its Rule 1925 opinion indicate that it considered the pertinent factors in sections 9721(b) when deciding that Atkinson should be incarcerated. *See* N.T., 3/12/2024, at 26-27; Municipal Court Opinion, 4/21/2025, at 6-9, 11-13. Nothing in the record indicates that the court "categorically" refused to consider mitigating factors; rather, it simply afforded them less weight than Atkinson wanted. This is not an abuse of discretion. *See Commonwealth v. Proctor*, 156 A.3d 261, 274 (Pa. Super. 2017).

Because the resentence is within the statutory limits and sufficiently explained on the record, the court's decision to sentence Atkinson to a period of incarceration and to issue the sentences consecutively is "peculiarly within the judge's discretion." *Pasture*, 107 A.3d at 27-28. As Atkinson does not present an argument that the municipal court erroneously applied the Resentencing Guidelines, sentenced outside the guidelines, or was clearly

unreasonable pursuant to subsection (c)(2), we must affirm Atkinson's sentence.  **See** 42 Pa.C.S. § 9781(c).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/27/2026